Grubin Law
EMPLOYMENT MATTERS

1270 Avenue of the Americas
Floor 7
New York, New York 10020

Rita Lenane-Massey
(M) 518.956.3664 | (O) 212.653.0631
rlmassey@grubinlaw.com

This matter has been referred by separate order to Magistrate Judge Lehrburger for general pretrial purposes, and the parties shall thus raise these disputes with Judge Lehrburger.

SO ORDERED.

Hon. Ronnie Abrams
October 29, 2026

**VIA ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

October 28, 2026

RE: *Selleck v. Expedia Group, Inc. et al.*, No. 1:25-cv-09854-RA

Dear Judge Abrams:

We represent Plaintiff Casey Selleck in the above-referenced matter and submit this letter, pursuant to Rule 3 of Your Honor's Individual Rules & Practices, to respectfully request an informal discovery conference to resolve several disputes between Plaintiff and Defendants Expedia Group, Inc., Expedia, Inc. and Alfonso Paredes (together, Defendants"). The first is Defendants' issuance of a subpoena (the "Subpoena") to nonparty OnMed LLC. ("OnMed"), Plaintiff's subsequent and now-former employer; the second concerns the location of depositions for Mr. Paredes as well as his colleague Carolina Cabero. The undersigned met-and-conferred[1] with counsel for Defendants on these as well as several additional discovery disputes in an attempt to narrow the issues before the Court, but these efforts were unsuccessful. Accordingly, Plaintiff makes this request for a discovery conference, or, alternatively, leave to file a motion to quash the Subpoena and a motion to compel Mr. Paredes and Ms. Cabero's appearance at their deposition in New York.

## I. Defendants' Subpoena to OnMed Should Be Quashed

On October 14, 2026, Defendants issued a sweeping subpoena to OnMed, which employed Ms. Selleck in November 2025, after her employment with Defendants had ended. *See* Exhibit A. The Subpoena demands testimony and documents concerning, *inter alia*, (i) Plaintiff's compensation; (ii) OnMed's compensation policies and practices; (iii) Plaintiff's job performance; (iv) the reason for Plaintiff's separation from OnMed; (v) Plaintiff's use of paid time off, medical leave and/or leaves of absence; (vi) Plaintiff's requests for medical accommodation; (vii) Plaintiff's application for employment and personnel file, and (viii) complaints by or against Plaintiff while employed by OnMed. Seven of its 14 document requests demand "all" documents on a given topic. Together,

[1] These meet-and-confers included email correspondence as well as a telephonic conference between the undersigned and counsel for Defendants on October 23, 2026. This conference lasted approximately forty-five minutes but was ultimately unsuccessful in resolving the issues we bring before the Court in this letter.

they would sweep in every piece of medical documentation Plaintiff submitted to OnMed and every internal communication about her performance and the end of her employment there.

Courts in this Circuit repeatedly quash subpoenas to a plaintiff's subsequent employers because of the harm they pose to the plaintiff's reputation and future employment prospects. *See, e.g.*, *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010) (quoting FRCP 26(c) to note that "the court may issue an order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense....""  and quashing subpoena to subsequent employer). That Plaintiff no longer works at OnMed does not diminish that harm. Dragging her former employer into this litigation has the potential to negatively affect her ability to maintain relationships with colleagues and harm her continued search for new employment.

Virtually all of the information sought by Defendants, to the extent it is even relevant, can be supplied by Plaintiff. Defendants did not wait to find out. They issued the Subpoena one day after sending Plaintiff a deficiency letter regarding her responses to Defendants' document requests concerning OnMed, before the parties could meet and confer. Plaintiff has produced thousands of pages of documents thus far, including most recently on October 23, 2026, and has not yet been deposed. Courts in this District regularly require defendants to exhaust these less intrusive means first. *See Abdelsayed v. N.Y. Univ.*, 2019 WL 2336533, at *2 (S.D.N.Y. June 3, 2019) (collecting cases and noting that courts in this Circuit often "require relevant information about subsequent employment to be obtained through less intrusive means; usually, through the plaintiff"); *Gresch v. United Parcel Serv. of Am., Inc.*, 2022 WL 1125621, at *2 (S.D.N.Y. Apr. 15, 2022) (declining to issue subpoena to plaintiff's subsequent employer before plaintiff had been deposed and fact discovery closed); *Chen v. SS & C Techs., Inc.*, 2023 WL 2387112, at *5 (S.D.N.Y. Mar. 7, 2023) (quashing subpoena to current employer where some of the information sought had already been produced); *Warnke*, 265 F.R.D. at 70 (same). At a minimum, the Subpoena should be quashed until Plaintiff's document production is complete and she has been deposed.

Finally, Defendants cannot show that the Subpoena seeks information relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The question here is why Defendants terminated Plaintiff's employment. How a different employer, with different decisionmakers, evaluated her performance, interacted with her health or disability, or ended her employment months later sheds no light on that question. *See DeLorenzo v. Spartan Sec. Servs., Inc.*, 2018 WL 3979597, at *2 (S.D.N.Y. Aug. 20, 2018) (modifying subpoena in FMLA and ADA discrimination and retaliation case to exclude subsequent employers' documents concerning plaintiff's absences, discipline and hiring, promotion and disciplinary decisions as too attenuated to be relevant); *Henry v. Morgans Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. 2016) ("Blanket requests of this kind are plainly overbroad and impermissible."). To the extent Defendants need Plaintiff's post-termination earnings for mitigation, Plaintiff has provided that information to them them directly.

For these reasons, Plaintiff respectfully requests an informal discovery conference, or alternatively, leave to file a motion to quash Defendants' subpoena to OnMed.

## II. <u>Defendant Paredes and Ms. Cabero Should Be Compelled to Appear in New York</u>

Though the parties agree that Defendant Paredes and his colleague Carolina Cabero are appropriate deponents, they disagree on the location of the depositions. On September 14, 2026, counsel for Defendants offered a single date for each deponent (October 27 and 28, respectively) to be deposed in Madrid, Spain, and has since refused to produce either witness in New York. Defendants offered these dates on a take-it-or-leave-it basis, before producing the documents Plaintiff needs to examine either witness. *See* Exhibit B.

These depositions are central to this case. Mr. Paredes is the key actor: he has admitted to telling Plaintiff in September 2024 that she was terminated for not being "fully in this role" in connection with her disability and need for medical leave, and to being the final decisionmaker. *See* Paredes Answer, ECF No. 23 ¶¶ 82, 85. Ms. Cabero, for her part, was a key participant in the decision to terminate Plaintiff's employment a second time, in February 2025. Where, as here, the credibility of key witnesses is in dispute, courts require in-person depositions. *See Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-CV-7331 (LJL), 2025 WL 1950728, at *2 (S.D.N.Y. July 16, 2025) (remote deposition "no substitute for an in-person deposition in this case"); *U.S. v. M/Y Amadea*, 2024 WL 4799887, at *5 (S.D.N.Y. Nov. 15, 2024) ("there is nothing extraordinary or inappropriate about seeking to take a deposition in person, particularly for a key witness").

Although a defendant is ordinarily deposed where he resides, that presumption is "merely a decision rule," and courts weigh cost, convenience and litigation efficiency in deciding where depositions should proceed. *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550-51 (S.D.N.Y. 1989) (ordering foreign defendants' depositions in New York). Each consideration favors New York here. Mr. Paredes travels to New York regularly for work—Expedia has a local headquarters here—and was personally served at the hotel where he stays on those visits, after refusing to accept service through his attorneys. *See* ECF No. 22. Requiring Mr. Paredes and Ms. Cabero, both seasoned international travelers, to appear here imposes little burden. *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2013 WL 12446892, at *2 (S.D.N.Y. May 28, 2013) (requiring deposition in New York rather than Brazil where, *inter alia*, deponent "travels here more than just occasionally"). By contrast, all counsel and documents are located here, and depositions in Madrid would force Plaintiff to absorb the time, expense and burden of sending counsel abroad. Litigation efficiency points the same way: in the event of disagreements during the depositions, the time difference between New York and Madrid virtually guarantees that the Court would be unavailable to resolve them.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Rita Lenane-Massey

Cc: Counsel of Record (*via* ECF)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY SELLECK,<br><br>Plaintiff,<br><br>- against -<br><br>EXPEDIA GROUP, INC., EXPEDIA, INC., and ALFONSO PAREDES, in his individual and professional capacities,<br><br>Defendants. | Case No. 1:25-cv-09854-RA<br><br>**NOTICE OF SUBPOENA** |

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, defendants Expedia Group, Inc., Expedia, Inc., and Alfonso Paredes, by and through their undersigned counsel, will serve on non-party OnMed, LLC a subpoena to testify at a deposition and to produce documents, a copy of which is enclosed.

Dated: New York, New York
October 14, 2026

FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP

*s/ Lance J. Gotko*
Lance J. Gotko
Blair R. Albom
Diana A. Arsanjani Reisman
7 Times Square
New York, NY 10036
Telephone: 212.833.1115
lgotko@fklaw.com
balbom@fklaw.com
dreisman@fklaw.com

*Attorneys for Defendants Expedia Group, Inc., Expedia, Inc., and Alfonso Paredes*

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| Casey Selleck<br>*Plaintiff*<br>v.<br>Expedia Group, Inc., Expedia, Inc., and Alfonso Paredes<br>*Defendant* | ) | Civil Action No. 1:25-cv-09854-RA |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: OnMed, LLC

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Exhibit A

| Place: | Date and Time: |
|---|---|
| Friedman Kaplan Seiler Adelman & Robbins LLP<br>7 Times Square, New York, NY 10036-6516 | 10/28/2026 9:30 am |

The deposition will be recorded by this method: by stenographic means and video recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Exhibit B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/14/2026

*CLERK OF COURT*

OR

s/ Lance J. Gotko

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Expedia Group, Inc., Expedia, Inc., and Alfonso Paredes, who issues or requests this subpoena, are:

Lance J. Gotko, 7 Times Square, New York, NY 10036-6516, lgotko@fklaw.com,

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

# SUBPOENA FOR TESTIMONY

## AREAS OF DESIGNATION AND INQUIRY

1. The dates of Ms. Selleck's Employment with OnMed, including her exact start date and, if applicable, the exact end date of her Employment.

2. Ms. Selleck's position(s), title(s), job description(s), reporting lines, and duties at OnMed.

3. Ms. Selleck's Compensation at OnMed, whether received or projected to be received, including: (a) any expected Compensation through 2040; (b) any sales commission(s) paid or payable to Ms. Selleck by OnMed, including the amount, timing, and basis for each such commission; and (c) any equity, stock, restricted stock, restricted stock units, or stock options granted or promised to Ms. Selleck by OnMed, including the applicable grant and vesting schedules, and whether and under what conditions any such equity or stock vested during Ms. Selleck's Employment or following her departure from OnMed.

4. The circumstances of and the reasons for the cessation of Ms. Selleck's Employment with OnMed, including any resignation, termination, separation, or departure, and the terms of any separation.

5. Ms. Selleck's recruitment, application for employment, and hiring by OnMed, including any resume, employment application, offer letter, and related Communications.

6. Any Accommodation requested by Ms. Selleck at OnMed and OnMed's response to any such request.

7. Whether Ms. Selleck was required or asked to travel as part of her role at OnMed, Ms. Selleck's response to any such requirement or request, and any related Communications or records.

8. Ms. Selleck's work schedule, attendance record, and any leaves of absence taken at OnMed.

9. Ms. Selleck's job performance at OnMed.

10. Any Communications between OnMed and Ms. Selleck Concerning the Action, the allegations in the Complaint, Expedia, Expedia Group, or Alfonso Paredes.

11. The authenticity, custody, and maintenance of the documents produced by OnMed in response to the Subpoena, attached hereto as **Exhibit B**.

**DEFINITIONS**

*The definitions and rules of construction set forth in Local Civil Rule 26.3 of the Local Rules of United States District Courts for the Southern and Eastern Districts of New York are incorporated herein by reference.*

1. The term "Action" refers to the action captioned *Casey Selleck v. Expedia Grp., et al.*, No. 25-cv-09854 (RA), pending in the United States District Court for the Southern District of New York.

2. The term "Complaint" refers to the complaint filed on December 2, 2025 by Plaintiff in the Action.

3. The terms "Plaintiff" or "Ms. Selleck" refer to Casey Selleck.

4. The term "Expedia" refers to Expedia, Inc.

5. The term "Expedia Group" refers to Expedia Group, Inc.

6. The terms "OnMed", "You", and "Your" refer to OnMed, LLC and its officers, directors, employees, agents, representatives, and any Person acting or purporting to act on its behalf.

7. The term "Employment" refers to Ms. Selleck's employment or engagement by OnMed in any capacity.

8. The term "Compensation" means any and all remuneration of any kind, including salary, wages, bonuses, commissions, restricted stock, restricted stock units, stock options, equity or equity awards, stipends, benefits, retirement or deferred compensation, or any other form of income or payment for services rendered.

9. The term "Accommodation" means any modification or adjustment to a job, the work environment, or the manner in which work is customarily performed, including any accommodation requested, discussed, or provided on account of a medical condition, disability, or impairment (including any vestibular, auditory, or neurological condition). Without limitation, the term includes:

(a) any limitation on, exemption from, or modification of business travel, including limits on the frequency, duration, or distance of travel, including air travel;

(b) any leave of absence, whether continuous or intermittent, paid or unpaid;

(c) any remote, virtual, or modified-location work arrangement, including substituting videoconference or telephone meetings for in-person meetings;

(d) any reduced or modified work schedule;

(e) any reassignment, removal, or substitution of job duties or functions; and

(f) any modification to address sensitivity to noise, motion, or other environmental conditions.

The term includes any such request made directly to You or through any third-party leave, disability, or benefits administrator acting on Your behalf.

10. The term "Relevant Time Period", unless otherwise specified, means the period beginning on the date of the first Communication between You (including any recruiter,

search firm, or other Person acting on Your behalf) and Ms. Selleck Concerning her potential employment with or engagement by You, and continuing through the present. The obligations hereunder are continuing in nature.

11. The use of the singular includes the plural, and the use of the term “the” shall not be construed as limiting the scope of any topic or request.

## INSTRUCTIONS

1. Unless otherwise noted, these areas of designation and inquiry cover the Relevant Time Period.

2. The areas of designation are by way of example only, and Defendants reserve the right to make inquiry of any subjects permitted under this Subpoena.

Case 1:25-cv-09854-RA Document 1-2 Filed 12/26/25 Page 13 of 54

# EXHIBIT B

## SUBPOENA FOR DOCUMENTS

## DOCUMENT REQUESTS

1. Documents sufficient to show the dates of Ms. Selleck's Employment with OnMed, including her exact start date and, if applicable, the exact end date of her Employment.

2. Documents sufficient to identify Ms. Selleck's position(s), title(s), job description(s), reporting lines, and duties at OnMed.

3. Documents sufficient to show all Compensation received or projected to be received by Ms. Selleck from OnMed, including salary, wages, bonuses, commissions, restricted stock, grants of restricted stock units, stock options, equity or equity awards, stipends, benefits, and retirement plans, including her expected Compensation through 2040.

4. Documents sufficient to show any sales commission(s) paid or payable to Ms. Selleck by OnMed, including the amount, timing, and basis for each such commission.

5. Documents sufficient to show all equity, stock, restricted stock, restricted stock units, or stock options granted or promised to Ms. Selleck by OnMed, including all award agreements, grant and vesting schedules, and whether and under what conditions any such equity or stock vested during Ms. Selleck's Employment or upon her departure from OnMed.

6. All Documents Concerning the circumstances of, and the reasons for, the cessation of Ms. Selleck's Employment with OnMed, including any resignation, termination, separation, or departure, and any separation agreement or release.

7. All Documents Concerning Ms. Selleck's stated or documented reasons for leaving OnMed.

8. All Documents Concerning Ms. Selleck's application for and efforts to obtain Employment with OnMed, including her resume, employment application, offer letter(s), and all related Communications.

9. All Documents and Communications Concerning any Accommodation requested by Ms. Selleck at OnMed, and OnMed's response to any such request.

10. All Documents and Communications Concerning any requirement or request that Ms. Selleck travel as part of her role at OnMed, Ms. Selleck's response to any such requirement or request, and any related correspondence or records.

11. Documents sufficient to show Ms. Selleck's work schedule, attendance records, and any leaves of absence taken at OnMed.

12. All Documents Concerning Ms. Selleck's job performance at OnMed, including any performance reviews and any disciplinary records.

13. Ms. Selleck's personnel file maintained by OnMed.

14. All Communications between OnMed and Ms. Selleck Concerning the Action, the allegations in the Complaint, Expedia, Expedia Group, or Alfonso Paredes.

## DEFINITIONS

*The definitions and rules of construction set forth in Local Civil Rule 26.3 of the Local Rules of United States District Courts for the Southern and Eastern Districts of New York are incorporated herein by reference.*

1. The term "Action" refers to the above-captioned action, namely, *Casey Selleck v. Expedia Group, Inc., Expedia, Inc., and Alfonso Paredes*, No. 25-cv-09854 (RA), pending in the United States District Court for the Southern District of New York.

2. The term "Complaint" refers to the Complaint filed by Plaintiff in the Action, as it may be amended.

3. The terms "Plaintiff" or "Ms. Selleck" refer to Casey Selleck.

4. The term "Expedia" refers to Expedia, Inc.

5. The term "Expedia Group" refers to Expedia Group, Inc.

6. The terms "OnMed", "You", and "Your" refer to OnMed, LLC and its officers, directors, employees, agents, representatives, and any Person acting or purporting to act on its behalf.

7. The term "Employment" refers to Ms. Selleck's employment or engagement by OnMed in any capacity.

8. The term "Compensation" means any and all remuneration of any kind, including salary, wages, bonuses, commissions, restricted stock, restricted stock units, stock options, equity or equity awards, stipends, benefits, retirement or deferred compensation, and any other form of income or payment for services rendered.

9. The term "Accommodation" means any modification or adjustment to a job, the work environment, or the manner in which work is customarily performed, including any accommodation requested, discussed, or provided on account of a medical condition, disability, or impairment (including any vestibular, auditory, or neurological condition). Without limitation, the term includes:

(a) any limitation on, exemption from, or modification of business travel, including limits on the frequency, duration, or distance of travel or on air travel;

(b) any leave of absence, whether continuous or intermittent, paid or unpaid;

(c) any remote, virtual, or modified-location work arrangement, including substituting videoconference or telephone meetings for in-person meetings;

(d) any reduced or modified work schedule;

(e) any reassignment, removal, or substitution of job duties or functions; and

(f) any modification to address sensitivity to noise, motion, or other environmental conditions.

The term includes any such request made directly to You or through any third-party leave, disability, or benefits administrator acting on Your behalf.

10. The term "Relevant Time Period", unless otherwise specified, means the period beginning on the date of the first Communication between You (including any recruiter, search firm, or other Person acting on Your behalf) and Ms. Selleck Concerning her potential employment with or engagement by You, and continuing through the present. The obligations hereunder are continuing in nature.

11. The use of the singular includes the plural, and the use of the term "the" shall not be construed as limiting the scope of any topic or request.

## INSTRUCTIONS

The following instructions apply to, and are part of, each request for production in this Subpoena. The requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, or other Persons acting or purporting to act on Your behalf.

1. Use of a verb in any tense includes the use of the verb in all other tenses.

2. Neither the inclusion or exclusion of capital letters nor the use of punctuation shall be construed to limit the scope of the requests herein.

3. For the avoidance of doubt, a request for Documents Concerning any particular subject matter includes a request for all Communications Concerning that subject matter and a request for all Documents Concerning such Communications.

4. In addition to original and final versions of Documents, all drafts, alterations, modifications, changes, and amendments of Documents shall be produced, as well as all copies non-identical to the original in any respect, including any copies bearing non-identical markings or notations of any kind.

5. Each request herein should be construed independently, and not with reference to any other request for purposes of limitation.

6. All Documents are to be produced in the form they are maintained in the usual course of business.

7. All Documents produced pursuant to this Subpoena shall be produced in accordance with the production specifications set forth in the ESI Protocol, attached hereto as **Exhibit C**.

8. If You object to any portion of a request, You shall produce Documents responsive to the remainder of the request.

9. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, please clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the Person performing the redaction or alteration. Any redaction must be clearly visible on the redacted Document.

Case 1:25-cv-09854-RA Document 1-1 Filed 11/26/25 Page 16 of 54

10. No definition or request herein shall be construed as an admission concerning the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the definition or request.

11. Unless otherwise specified, the time period for these requests is the Relevant Time Period.

12. You may avail Yourself of the protections of the Protective Order entered in this Action, attached hereto as **Exhibit D**, by complying with its terms.

# EXHIBIT C

# ESI PROTOCOL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CASEY SELLECK,<br><br>Plaintiff,<br><br>v.<br><br>EXPEDIA GROUP, INC., EXPEDIA, INC., and ALFONSO PAREDES, in his individual and professional capacities,<br><br>Defendants. | Civil Action No.: 25-cv-9854-RA |

**PROTOCOL FOR THE DISCLOSURE, SEARCH, AND**
**PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

Plaintiff Casey Selleck ("Plaintiff"), Defendants Expedia Group, Inc. ("Expedia Group"), Expedia, Inc. ("Expedia," and together with Expedia Group, "Expedia Defendants") and Alfonso Paredes ("Paredes") (together with the Expedia Defendants, "Defendants" and each individually, a "Defendant") (together, the "Parties" and each individually, a "Party") hereby agree to the following protocol for the disclosure of electronic systems, and both the search for and production of electronically stored information, or "ESI" (the "Protocol"). It is the Parties' objective that this Protocol facilitate the just, efficient, and complete discovery of ESI, and to promote, whenever possible, the early resolution of disputes regarding discovery of ESI without the need for Court intervention. Nothing in this Protocol shall limit a Party's right to seek or object to discovery as set out in the Federal Rules of Civil Procedure ("FRCP") and/or Local Civil Rules of the United States District Court for the Southern District of New York ("Local Rules"), or to object to the authenticity or admissibility of any ESI produced pursuant to this Protocol.

## I. GENERAL AGREEMENTS

**A. <u>Scope of Discovery:</u>** The standards, limits, and scope of discovery shall be governed by the FRCP and Local Rules. The Parties agree to meet and confer in good faith with regard to any discovery disputes, and any dispute the parties cannot resolve amicably shall be resolved under the burdens and standards set forth in the FRCP and Local Rules.

**B. <u>Scope of Protocol:</u>** This ESI Protocol shall govern all Parties and non-parties to this action.

**C. <u>No Designation of Discovery Requests:</u>** Production of ESI in the reasonably usable form set out in this Protocol need not include any reference to the requests to which a document or ESI may be responsive, except as may be required by the FRCP or Local Rules.

**D. <u>Inadvertent Production:</u>** The inadvertent production of any material constituting or containing attorney-client privileged information or work product, or constituting or containing information protected by applicable privacy laws or regulations ("Privileged Material") shall not waive such privilege or protection. In the event that Privileged Material has been inadvertently disclosed, the following "claw back" procedure shall apply:

a. The Party seeking the claw back shall send a letter identifying the Privileged Material to be returned and stating the grounds for the assertion of privilege;

b. The recipient thereof will either return and destroy the Privileged Material or respond in writing within two business days with an explanation as to why the material is not privileged;

c. In the event of a dispute as to the return of the Privileged Material, the Party seeking the claw back and the recipient(s) will meet and confer promptly;

Case 1:25-cv-09785-AT-RWL Document 44 Filed 01/12/26 Page 20 of 35

d. If the issue remains unresolved, the Party seeking the claw back may make an application to the Court; and

e. Until such time as the issue has been fully and finally resolved, such Privileged Material shall, for all purposes, be considered Privileged Material.

## II. ELECTRONICALLY STORED INFORMATION

**A. Format of Production:** The Parties shall produce ESI in reasonably usable form. Except as stated in Section II(B) below or as agreed hereafter by the Parties, such reasonably usable form shall be the single-page black and white TIFF or color JPG image format (300 DPI resolution, Group IV compression) with OCR text (*i.e.*, text searchable). If the receiving Party seeks production in native format of specifically identified ESI produced originally in PDF form, the producing Party shall respond reasonably and in good faith to any such request. Each Party may make requests for production of specifically identified documents in color and the other Party shall respond reasonably and in good faith to any such request.

**B. Documents Subject to Production in Native Format:** Electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), desktop databases (*e.g.*, Access), and audio/video multimedia files that have been identified as responsive shall be produced in native format. Each Native File, with the exception of PowerPoints, should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. PowerPoint documents should be fully imaged, and not produced with a placeholder image. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each document being produced in native format should be included in the data load file indicating

the relative file path to each native file in the production delivery. The Parties may, by mutual agreement memorialized via email, allow production of additional categories of documents in native format without the need to amend this Protocol.

**C. <u>Text and Chat Messages:</u>**

i. When producing text and chat messages (e.g., messages sent via SMS, Teams, WhatsApp, Signal, iMessage, Slack or other short messaging platforms), those messages must be unitized on the conversation/channel level into 24-hour calendar-day chunks, or conversation days, with each conversation day including all messages in that conversation or channel on a given calendar day.

**D. <u>Hard Copy Documents:</u>**

i. Each page of a hard copy document shall be scanned into a TIFF image. The Parties shall undertake reasonable efforts, if a document consists of more than one page, to physically unitize the document and any attachment(s) as it existed in the original when creating the image files.

**E. <u>Load File:</u>**

i. ESI and scanned hard-copy documents will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding. The Parties shall produce the fields of metadata listed in Attachment A hereto, to the extent such metadata is available.

**F. <u>Parent-Child Relationship:</u>**

i. Emails shall be produced along with all attachments in sequential order as part of a family, maintaining the parent-child relationship, to the extent the message or any attachment is responsive and not privileged. If any part of a family is responsive, it shall be

produced with the entire family, including those documents that are nonresponsive. Any emails or attachments to emails withheld on privilege grounds will be produced with a placeholder slipsheet and logged on a privilege log.

**G. Bates Numbering:**

i. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates number shall maintain a consistent prefix and a fixed numeric length, with leading zeros used as necessary to maintain that length, and shall contain no special characters (other than a dash "-" or underscore "_"). Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically stamped onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend or redactions (where applicable). The confidentiality legend shall be stamped into the document's image at a location that does not obliterate or obscure any information from the source document. Each image file shall be named with the Beginning Bates Number of the document, followed by the extension ".TIFF." Any native documents shall be named with the Beginning Bates number of the document.

**H. Text/OCR:**

i. Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR text formatted as UTF-8. A document-level text file will be provided containing the extracted text (or OCR text for documents where no extracted text exists). The file will be named after the Beginning Bates number of each document. Where a document contains image redactions, only OCR text excluding redacted portions will be provided.

**I. Use of Search Terms and Custodians:**

i. The Parties shall meet and confer to discuss the use of reasonable search terms, file types, and date ranges ("ESI Search Protocol"). The Parties shall use their best efforts to agree on the ESI Search Protocol by June 19, 2026 or otherwise as soon as practicable.

ii. To the extent the search terms agreed upon by the Parties result in excessive and/or overly burdensome results, the producing Party retains the right to meet and confer with the receiving Party to seek revisions to search terms following disclosure of a hit report reflecting the excessive and/or overly burdensome results. The receiving Party will meet and confer with regard to same in good faith. Any disagreements that cannot be resolved between the Parties will be submitted to the Court.

iii. Nothing in this section shall limit a Party's right to seek additional custodians and/or keywords to be applied to the ESI Search Protocol at any point during discovery. The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.

iv. The Parties will reasonably cooperate to disclose and identify the ESI systems (*i.e.*, devices, email systems, text messaging platforms, and computer software) that may contain relevant and/or responsive ESI. However, identification of any such ESI system does not waive any right by either Party to object to the search thereof or to object to the production of any ESI contained within such system for any reason.

v. Keyword searches will be conducted of the email systems, internal messaging systems (*e.g.*, Slack; Microsoft Teams), and text messaging platforms (*e.g.* WhatsApp) for the agreed-upon custodians.

vi. If the Parties agree that Plaintiff may forego the use of an e-discovery vendor, Plaintiff will cause her attorneys to conduct a linear review of her personal email account, text messages, social media postings and profiles, and electronic files for relevant and responsive documents.

**J.** **<u>Time Zone Processing:</u>** The processing time zone for all documents must be done using Coordinated Universal Time (UTC).

**K.** **<u>Deduplication and Email Thread Suppression:</u>** A Party is required to produce only a single copy of a responsive document and may deduplicate responsive ESI across custodians. Each Party may deduplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain. The Parties may use email thread suppression technology to reduce the burden of reviewing and producing duplicative iterations of emails, provided that the Party's production contains the unique, responsive emails and attachments associated with such an email thread. Any deduplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including carbon copy ("cc") and blind carbon copy ("bcc") recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space), and attachments are wholly included in another more complete email.

**L.** **<u>Redactions:</u>** If the producing Party finds that redactions are needed to protect from disclosure of information subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity, redacted documents may be produced as TIFF\JPG image files with OCR text formatted as UTF-8. If the producing Party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form, through the use of industry accepted native redaction tools. Any metadata fields for

redacted documents that would reveal privileged information shall be excluded from the load file. Each redaction applied on the image or native file must include redaction text (e.g., Privileged – Redacted, Non-Responsive – Redacted, PII – Redacted, etc.) to clearly indicate the type of redaction being applied. The OCR or searchable text provided must accurately reflect the content of the document, as produced, removing all redacted content.

**M.** **Privilege Logs:** Each Party will produce a privilege log consisting of the available information set forth below 30 days after the completion of document production. Documents that have been redacted on the basis of privilege shall be included in the log, subject to exceptions agreed to by the Parties when the burden of individual listing outweighs any benefit in which case categorical privilege logging may be appropriate. The Parties recognize that a categorical privilege log may be appropriate where a production is voluminous. Where a Party provides a categorical, rather than a document-by-document privilege log, it must provide the volume of documents withheld (both including and not including family members) and category descriptions of documents withheld that adequately describe those documents and allow a determination why the privilege might apply to the documents described.

Each privilege log shall identify:

a. Sequential number associated with each privilege log record;

b. The date or date range of the document(s);

c. The identity of all senders/authors and or addressees/recipients/copyees of the document;

d. The title or subject of the document(s);

e. A description of the category and/or contents of the document(s) that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

f. The type or nature of the privilege asserted (e.g., attorney-client privilege; work product doctrine).

The Parties will identify any challenges to privilege assertions within thirty (30) days of receiving the privilege log. For challenges to privilege assertions that cannot be promptly resolved after good faith efforts to meet and confer, the Parties should proceed in accordance with Judge Abrams' Individual Rules & Practices in Civil Cases. Privileged documents that were created after November 26, 2025, such as Documents created the Parties' counsel or between the Parties and their counsel, do not need to be produced or logged in any privilege log.

**N.** **Production Delivery Format:** Productions shall be delivered via secure FTP, encrypted USB, USB-C external media, or another secure method agreed by the parties. Any physical media shall be encrypted, and passwords shall be transmitted separately from the production media.

**O.** **Encrypted Files:** The producing Party will take reasonable steps, prior to production, to provide passwords and any other access requirements for encrypted files produced.

**SO STIPULATED AND AGREED.**

Dated: June12, 2026
New York, New York

**GRUBIN LAW GROUP, P.C.**

By: */s/ Rita Lenane-Massey*
Rita Lenane-Massey

1270 Avenue of the Americas, Floor 7
New York, New York 10020
rlmassey@grubinlaw.com

*Attorneys for Plaintiff*

Dated: June12, 2026
New York, New York

**FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP**

By: */s/ Lance J. Gotko*
Lance J. Gotko

7 Times Square
New York, NY 10036-6516
lgotko@fklaw.com

*Attorneys for Defendants*

## ATTACHMENT A

A "✓" denotes that the indicated field should be present in the load file produced. Metadata should be included to the extent available and left empty if unavailable.

| Field name | Field Description | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|
| BEGBATES | Start Bates (including prefix) - No spaces. | ✓ | ✓ | ✓ |
| ENDBATES | End Bates (including prefix) - No spaces. | ✓ | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent document. | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment. | ✓ | ✓ | ✓ |
| PGCOUNT | Page count. | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. The primary custodian or source associated with the produced record. | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | | ✓ | ✓ |
| FROM | Sender of an Email as pulled from the processed metadata. | | ✓ | |
| TO | Recipient - format as pulled from the processed metadata. | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: as pulled from the processed metadata. | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: as pulled from the processed metadata. | | ✓ | ✓ |
| TITLE | Document Title. | | ✓ | ✓ |
| SUBJECT | Subject line | | ✓ | ✓ |
| PARENTDATETIME | The Parent Email Sent Date/Time for all members of an email family. Loose eDocs use the Last Modified Date/Time: MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| SENTDATETIME | Date and Time Sent (Use UTC time zone). | | ✓ | ✓ |
| RCVDDATETIME | Date and Time Received (Use UTC time zone). | | ✓ | ✓ |
| CREATEDDATETIME | Date Time Created (Use UTC time zone). | | ✓ | ✓ |



4919-9479-9021.3

| **Field name** | **Field Description** | **Hard Copy** | **E-mail** | **Other ESI** |
|---|---|---|---|---|
| LASTMODDATETIME | Date Time Last Modified. | | ✓ | ✓ |
| FILEPATH | The original location of the file in the file system | | ✓ | ✓ |
| FILENAME | File name - name of file as it appeared in its original location. | | ✓ | ✓ |
| FILESIZE | Size of native file in bytes. | | ✓ | ✓ |
| FILE EXTENSION | .xls, .pdf, .wpd, etc. | | ✓ | ✓ |
| DOCTYPE | Email, attachment, edoc, etc. | | ✓ | ✓ |
| RECORDTYPE | Application used to create native file (*e.g.*, Excel, Outlook, Word). | | ✓ | ✓ |
| TIMEZONE | Time zone used during processing of data conforming to UTC (Coordinated Universal Time). | | ✓ | ✓ |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments). | | ✓ | ✓ |
| ALLCUSTODIANS | Identifies all custodians or sources from which an exact duplicate of the produced document was collected before deduplication. This field should be populated when documents are deduplicated across custodians and should include the producing custodian and any duplicate custodians, to the extent available. | | ✓ | ✓ |
| PRODVOL | Production volume of data. E.g. “PROD_001”. | ✓ | ✓ | ✓ |
| CONFIDENTIALITY | Document’s endorsement branding branded on bottom-left corner of each produced image. E.g. “CONFIDENTIAL”, “ATTORNEYS’ EYES ONLY”. | ✓ | ✓ | ✓ |

| Field name | Field Description | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|
| REDACTED | Indicates if a produced document contains image or native redactions. Values would read eithers “TRUE” or “FALSE”. | ✓ | ✓ | ✓ |
| TEXTLINK | file path to load the text file of the extracted text or the OCR text for each record. | ✓ | ✓ | ✓ |
| NATIVELINK | file path to the load the native file for each record. | | ✓ | ✓ |

+ Any other fields considered relevant by the producing party.

# EXHIBIT D

# PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY SELLECK,<br><br>Plaintiff(s),<br><br>*- against -*<br><br>EXPEDIA GROUP, INC., *et al.*,<br><br>Defendant(s). | No. 25 Civ. 09854 (RA)<br><br>**CONFIDENTIALITY STIPULATION AND ~~PROPOSED~~ PROTECTIVE ORDER** |

WHEREAS, the parties having agreed to the following terms of confidentiality, and the Court having found that good cause exists for the issuance of an appropriately tailored confidentiality order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby

ORDERED that the following restrictions and procedures shall apply to the information and documents exchanged by the parties in connection with the pre-trial phase of this action:

1. Counsel for any party may designate any document or information, in whole or in part, as confidential if counsel determines, in good faith, that such designation is necessary to protect the interests of the client in information that is proprietary, a trade secret, or otherwise sensitive non-public information ("Confidential Information"). Information and documents designated by a party as confidential will be stamped "CONFIDENTIAL."

2. The Confidential Information disclosed will be held and used by the person receiving such information solely for use in connection with the action.

3. In the event a party challenges another party's designation of confidentiality, counsel shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court. Nothing in this Protective Order constitutes an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party reserves the right to object to the use or admissibility of the Confidential Information.

4. Documents designated as "CONFIDENTIAL" shall not be disclosed to any person, except:

   a. The requesting party and counsel, including in-house counsel;

   b. Employees of such counsel assigned to and necessary to assist in the litigation;

c. Consultants or experts assisting in the prosecution or defense of the matter, to the extent deemed necessary by counsel; and

d. The Court (including the mediator, or other person having access to any Confidential Information by virtue of his or her position with the Court).

The parties should meet and confer if any production requires a designation of “For Attorneys’ or Experts’ Eyes Only” ("AEEO").

5. Prior to disclosing or displaying the Confidential Information to any person, counsel must:

a. Inform the person of the confidential nature of the information or documents;

b. Inform the person that this Court has enjoined the use of the information or documents by him/her for any purpose other than this litigation and has enjoined the disclosure of the information or documents to any other person; and

c. Require each such person to sign an agreement to be bound by this Order in the form attached as Exhibit A.

6. The disclosure of a document or information without designating it as “CONFIDENTIAL” or "AEEO" shall not constitute a waiver of the right to designate such document or information as such. If so designated, the document or information shall thereafter be treated as Confidential Information subject to all the terms of this Stipulation and Order.

7. Any Personally Identifying Information (“PII”) (e.g., social security numbers, financial account numbers, passwords, and information that may be used for identity theft) exchanged in discovery shall be maintained by the receiving party in a manner that is secure.

8. Pursuant to Federal Rule of Evidence 502, the production of privileged or work product protected documents or communications, electronically stored information (“ESI”) or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party’s right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

9. Notwithstanding the designation of information as “CONFIDENTIAL” in discovery, there is no presumption that such information shall be filed with the Court under seal. The parties shall follow the Court’s procedures for requests for filing under seal.

10. At the conclusion of litigation, Confidential Information and any copies thereof shall be promptly (and in no event later than 30 days after entry of final judgment no longer subject to further appeal) returned to the producing party or certified as destroyed, except that the parties' counsel shall be permitted to retain their working files on the condition that those files will remain protected.

11. Nothing herein shall preclude the parties from disclosing material designated to be Confidential Information if otherwise required by law or pursuant to a valid subpoena.

SO STIPULATED AND AGREED.

Dated: June 12, 2026
New York, New York

*/s/ Rita Lenane-Massey*
Counsel for Plaintiff(s)

*/s/ Lance J. Gotko*
Counsel for Defendant(s)

SO ORDERED.

HON. RONNIE ABRAMS
United States District Judge

Dated: June 15, 2026

**EXHIBIT A**

**Agreement**

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled ___________________ have been designated as confidential. I have been informed that any such documents or information labeled “CONFIDENTIAL” or "Attorneys and Experts Eyes Only" are confidential by Order of the Court. I hereby agree that I will not disclose any information contained in such documents to any other person. I further agree not to use any such information for any purpose other than this litigation.

Dated: __________________, 20__

_______________________________
Signature

_______________________________
Name (printed)

Signed in the presence of:

__________________________________
(Attorney)

# EXHIBIT B

**From:** Gotko, Lance J.
**To:** Rita Lenane-Massey
**Cc:** Albom, Blair; Arsanjani Reisman, Diana
**Subject:** RE: Selleck v. Expedia: Deposition Dates
**Date:** Friday, September 18, 2026 11:30:40 AM

---

Hi, Rita – In light of the impeding November 13 discovery cut off, we proactively reached out to offer October 27 and 28 for the depositions of Mr. Parades and Ms. Cabero in Madrid, Spain which, at your option, you could take in person or remotely. You have rejected our offer.

For good reason, you do not claim that remote depositions would cause you any hardship. Remote depositions of witnesses located at a distance from counsel are common and save time and cost. And Mr. Parades and Ms. Cabero are very busy, high-level executives of Expedia. Under the circumstances, the law does not support your flat refusal of our proposal. There is a presumption that depositions should take place where individuals reside or have their principal place of business – particularly where, as here, the witnesses are high-ranking officers and employees whose absence from their workplace would have an adverse impact on the functioning of the business. *See Glatt v. Fox Searchlight Pictures Inc.*, 2012 WL 2108220 at *4 (S.D.N.Y. 2012).

It is now just September 18. That Expedia has not made its ESI production yet is irrelevant to getting these late-October dates locked down for depositions. You will have sufficient time in advance of October 27 to review Expedia's production.

We will be able to give you until Monday morning to reconsider your position. After that, we will advise Mr. Parades and Ms. Cabero that those dates are not needed and they will fill up in short order. We are advised that, other than October 27 and 28, Mr. Parades and Ms. Cabero will not have any availability through November 13 – and, indeed, thereafter, because the year-end closing process for Expedia is likely to consume all of their time.

Thank you.

**Lance J. Gotko**
(212) 833-1115
lgotko@fklaw.com

FRIEDMAN KAPLAN

**From:** Rita Lenane-Massey <rlmassey@grubinlaw.com>
**Sent:** Wednesday, September 16, 2026 6:08 PM
**To:** Gotko, Lance J. <lgotko@fklaw.com>
**Cc:** Albom, Blair <balbom@fklaw.com>; Bardavid, Dania <dbardavid@fklaw.com>; Arsanjani Reisman, Diana <dreisman@fklaw.com>
**Subject:** RE: Selleck v. Expedia: Deposition Dates

Lance,

Thanks for your email concerning the depositions of Alfonso Paredes and Carolina Cabero. We do not agree to hold these depositions remotely from New York with the Defendant and Ms. Cabero in Madrid. Among other reasons, both of these individuals have offices in New York, where the Plaintiff and attorneys for all parties are located. As you noted, both the Defendant and Ms. Cabero travel frequently, including to New York, and they must make themselves available to us here.

Further, as you know, Defendants have not yet begun to produce ESI to us. We cannot commit to deposition dates without these documents and sufficient time to review them.

Rita

**Rita Lenane-Massey**
Principal
**Grubin Law Group PC**
1270 Avenue of the Americas, Floor 7
New York, NY 10020
**M**: 518.956.3664 | **O**: 212.653.0631
rlmassey@grubinlaw.com | www.grubinlaw.com

**From:** Gotko, Lance J. <lgotko@fklaw.com>
**Sent:** Tuesday, September 15, 2026 2:16 PM
**To:** Rita Lenane-Massey <rlmassey@grubinlaw.com>
**Cc:** Albom, Blair <balbom@fklaw.com>; Bardavid, Dania <dbardavid@fklaw.com>; Arsanjani Reisman, Diana <dreisman@fklaw.com>
**Subject:** Re: Selleck v. Expedia: Deposition Dates

P.P.S. And when I say, "In Madrid," I mean that's where the witnesses will be. If you want

to take the depositions remotely, we would have no objection. I will be on site with the witnesses.

---

**From:** Gotko, Lance J. <lgotko@fklaw.com>
**Sent:** Monday, September 14, 2026 6:42:43 PM
**To:** Rita Lenane-Massey <rlmassey@grubinlaw.com>
**Cc:** Albom, Blair <balbom@fklaw.com>; Bardavid, Dania <dbardavid@fklaw.com>; Arsanjani Reisman, Diana <dreisman@fklaw.com>
**Subject:** Re: Selleck v. Expedia: Deposition Dates

P.S. I have to ask for a quick reply because the dates could be lost before we lock them down. Thanks again.

---

**From:** Gotko, Lance J.
**Sent:** Monday, 14 September 2026 17:07:21
**To:** Rita Lenane-Massey <rlmassey@grubinlaw.com>
**Cc:** Albom, Blair <balbom@fklaw.com>; Bardavid, Dania <dbardavid@fklaw.com>; Arsanjani Reisman, Diana <dreisman@fklaw.com>
**Subject:** Selleck v. Expedia: Deposition Dates

Rita, we have just heard from our clients regarding deposition dates for Carolina Cabero and Alfonso Paredes. They can make themselves available October 27 and 28, in Madrid. These busy individuals' schedules are impossible, and we are surprised and happy to be able to offer them to you. Please let us know whether you want us to tell them to lock down those dates.  Thank you.

Lance